UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT MINIAS and VIVIAN MINIAS, wife | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:07-0623 ) Judge Echols |
| HISTORIC HOTELS OF NASHVILLE, L.L.C. d/b/a THE HERMITAGE HOTEL, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM

This is a premises liability action based upon diversity jurisdiction in which Plaintiff Robert Minias ("Minias") claims he was injured when he fell on Defendant's property. Pending before the Court is a Motion for Summary Judgment (Docket Entry No. 17) filed by Defendant Historic Hotels of Nashville, L.L.C., d/b/a the Hermitage Hotel. That Motion has been fully briefed by the parties.

## I. STATEMENT OF RELEVANT FACTS

The relevant facts are virtually undisputed[1] and are as follows. On the morning of June 19, 2006, Minias accompanied his brother Raymond Minias to the Hermitage Hotel where Raymond Minias was the hotel manager. Minias claims that his brother asked him to assist him in carrying

---

[1] As required by Local Rule 56.01(b), Defendant accompanied its Motion for Summary Judgment with a Concise Statement of Undisputed Material Facts. Plaintiffs did not respond to that statement as required by Local Rule 56.01(c) and erroneously characterize Defendant's filing as an apparent attempt to comply with Rule 56.03 of the Tennessee Rules of Civil Procedure. Nevertheless, Plaintiffs conceded the accuracy of the majority of Defendant's statement in their response to Defendant's Motion for Summary Judgment (Docket Entry No. 20 at 1).

1

table linens from the interior of the hotel to the rooftop of the parking garage for a luncheon event. Minias agreed.

To obtain the linens, Minias and his brother walked from the rooftop of the parking garage into the seventh level garage elevator and took the elevator to the second level of the garage. They then walked from the second level of the garage down a ramp to the ground level of the garage. On the ground level, they stepped over a yellow painted sidewalk curb and proceeded on the elevated sidewalk, past a VIP valet parking space in which a car was parked, into the interior of the hotel.

Once inside the hotel, Minias and his brother retrieved linens from a hotel supply room and began walking to the rooftop of the parking garage following the route from which they had come. Minias was walking behind his brother with three or four table linens draped over his arms with his palms facing up.

The brothers walked up an employee stairwell and through an employee entrance corridor into the parking garage. In the garage, they proceeded on the elevated sidewalk past the VIP valet parking space. A car was parked in the parking space and so the brothers walked around the parked car. As they did so, Minias fell at or near the sidewalk curb. His brother did not see the accident because he was facing forward and talking on the cell phone with someone from Human Resources who was inquiring about the location of the linens.

The sidewalk curb where Minias fell was marked with bright yellow paint on the top and all sides. The sidewalk curb was of standard size. Minias claims he did not see the sidewalk curb marked with bright yellow paint because of the linens he was carrying in his arms.

The sidewalk curb area where Minias fell was the same curb (approximately eight (8) to ten (10) feet down the sidewalk) that the brothers crossed over on their way to retrieve the linens.

Further, the same vehicle was parked in the same parking space when the brothers went to get the linens as when they returned.

Minias claims he was seriously injured as a result of the slip and fall. He and his wife filed this diversity action, primarily alleging negligence and loss of consortium.

In their Amended Complaint, Plaintiffs repeatedly allege that the parking garage was "dimly lit" or "darkened," that Defendant was aware of this condition, and that, nevertheless, Defendant took no effort to warn Plaintiff or others or to rectify the condition. However, in his deposition, Minias testified that the lighting would not have mattered because the linen he was carrying obstructed his view and that the lighting could have been the same as that in an operating room and it would not have helped. (Minas Depo. at 138-140, 145).

In support of its Motion for Summary Judgment, Defendant has submitted an expert report from Richard K. Davis ("Davis"), who is President and Senior Designer of Ardee Design Group, LLC and who holds a lighting certification from the National Council on Qualifications for Lighting Professions. Davis conducted an illumination study of the area in question in accordance with standards which have been developed by the Illuminating Engineering Society of North America. In his report, Davis notes that the area has natural lighting, as well as several florescent fixtures. Davis opines that the lighting in the parking garage where Minias tripped over the curb meets the industry standard for effective and safe lighting in a parking facility.

In response, Plaintiffs indicate they "will offer no proof contrary to the Defendant's expert with regard to lighting and believe summary judgment on the issue of lighting is appropriate." (Docket Entry No. 20 at 2). Given this concession, as well as Minias' deposition testimony and the expert report of Davis, the facts show the parking facility was sufficiently lit, the lighting met or

3

exceeded industry standards, and insufficient or inadequate lighting did not cause or play any part in Minias' accident.

There is no evidence that, aside from Minias, anyone has fallen in the area of the Hermitage Hotel parking garage where Minias fell. Nor is there any evidence that anyone has ever complained to the Hermitage Hotel regarding an unsafe or dangerous condition in or around the area where Minias fell.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson,

477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. LEGAL ANALYSIS

In order to be liable for negligence under Tennessee law, a plaintiff must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury; (4) causation in fact; and (5) proximate or legal cause. Colin v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998). "Recovery in a negligence action may occur only if the plaintiff can prove that the defendants' conduct was negligent and was the proximate cause of plaintiff's injury." Kellner v. Budget Car and Truck Rental, Inc., 359 F.3d 399, 403 (6th Cir. 2004)(applying Tennessee law). Because Minias cannot establish either that the Defendant was negligent or that its negligence was the proximate cause of his injuries, he cannot recover and hence Defendant is entitled to summary judgment.[2]

Under Tennessee law, owners or occupiers of business premises are not insurers of their customers' safety. McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 902 (Tenn.1996). They do, however, have a duty to use reasonable care to protect their customers from unreasonable risks of harm, including "maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired." Heggs v. Wilson Inn Nashville-Elm Hill, Inc. 2005 WL 2051287 at *3 (Tenn. Ct.

---

[2]Because Minias cannot recover, his wife cannot recover. Her claim is for loss of consortium which is a derivative claim in that it arises from Minias' claim for personal injury. Hunley v. Silver Furniture Mfg. Co., 38 S.W.3d 555, 557 (Tenn. 2001)(collecting cases).

5

App. 2005). The existence or nonexistence of a duty owed to the plaintiff by the defendants is a question of law for the court. Staples v. CBL & Assoc., Inc., 15 S.W. 3d 83, 89 (Tenn. 2000); Marr v. Montgomery Elevator Co., 922 S.W.2d 526, 529 (Tenn. Ct. App. 1995).

Minias has not established a breach of a duty. "In the law of negligence, duty is simply a legal obligation owed by a defendant to conform to a reasonable person standard of care for the protection of the plaintiff against unreasonable risks of harm." Potts v. Nashville Elec. Serv., 2006 WL 468727 at *4 (Tenn. Ct. App. 2006).

The Tennessee Supreme Court has explained that " a risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). While recovery is not barred merely because a condition presents an open and obvious danger, the obviousness of a danger is a factor to be considered, at least insofar as a premises owner knew or should have anticipated the harm, notwithstanding the obviousness of the danger. Kenning v. HCA Health Serv. of Tenn., Inc., 1999 WL, 1206697 at *3 (Tenn. Ct. App. 1999). "In other words, the issue is whether [plaintiff] has made 'any showing from which it can be said that the defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused [his] injuries.'" Id. at *3 (quoting, Eaton v. McLain, 891 S.W.2d 587, 594 (Tenn. 1994)).

In this case, the undisputed evidence shows that the sidewalk curb where Minias fell was of standard size and clearly marked with bright yellow paint on the top and sides. The undisputed evidence also shows that the area was sufficiently lit to see the marked curb. Further, the record is devoid of any evidence that anyone has ever fallen in the area of the garage where Minias fell or any

6

evidence suggesting that anyone ever complained to the Hermitage Hotel regarding any sort of unsafe or dangerous condition in the area where he fell. The Court therefore finds no genuine issue of material fact requiring trial on the issue of whether the Defendant breached a duty to to Minias.

The Tennessee Court of Appeals' decision in Cagle v. Gaylord Entertainment Co., 2002 WL 31728866 (Tenn. Ct. App. 2002) supports this Court's conclusion. There, plaintiff sued when she fell over a curb in a parking garage at the Opryland Hotel and sustained injury. The record showed the following to be the relevant facts:

> . . . The fall occurred between parked cars at or near a location where defendant had erected a long, continuous single raised curb/barrier. The white concrete curb in question is typical in configuration to those commonly found in parking lots. It is slanted on one side, a straight drop on the opposite side, and rounded at the top. The unpainted curb's white color contrasts with the black asphalt pavement in daylight. The curb as constructed is a long single continuous curb which separates opposing marked parking spaces. Although the curb served the purpose of "keeping people from getting in without paying" and adding additional direction to drivers as to parking positions, it does not keep opposing cars from bumping into each other. The parking lot in question is lit by periodic raised lights which illuminate the marked walkways but at night allow shadows between closely parked cars which make seeing the curb difficult or impossible.
>
> \* \* \*
>
> The curb has no obvious physical or construction defects. There is no expert evidence that the curb or parking lot is designed or constructed in an unsafe, perilous or dangerous manner. There is no evidence in the record of other tripping accidents in the parking lot on this curb or in this location. There is no evidence in the record of any building code violation.

Id. at 1-2. In affirming the grant of summary judgment in favor of the Defendant, the Tennessee Court of Appeals wrote:

> The proof in this record, like common experience, demonstrates that curbs like the one in question are ubiquitous. They are frequently placed in commercial parking lots to direct traffic, to serve as parking stops, and to protect medians. Plaintiff claims that the curb in question had no purpose other than to keep people from "getting in without paying." She argues that the curb does not stop vehicles from bumping into one another when they park facing each other, and does not

7

border any median. At night, the lighting in the parking lot does not clearly illuminate the curb, due to the shadows created by parked cars. The curb is not painted yellow, or with a paint that glows in the dark.

It is conceivable that proof could be developed that would lead to the conclusion that the design and construction of the curb and the lighting in the parking lot created an unsafe, dangerous, or perilous condition. However, this record contains no such proof. There is no proof that any building code or standard was violated in the construction or maintenance of the parking lot. No expert has been produced to testify that the design or placement of the curb or the lighting violates any construction standard, any state or federal accessibility requirement, or any building code.

Likewise, the record is devoid of evidence of other prior incidents involving a person tripping over this curb, or any curb in this parking lot. In light of the number of visitors traversing this parking lot on a daily basis, the lack of proof of other similar incidents does not lead to the conclusion that the curb creates an inherent danger. The fact that Ms. Cagle tripped on the curb is not proof that the curb is dangerous or unsafe. Graceful athletes often trip on yardlines in football or on the foul line in basketball. People do trip and fall on conditions that are not unsafe.

Accordingly, without some evidence that the curb had some dangerous defect, or that the design or maintenance of lighting or lack of paint on the curb created an unsafe condition, the plaintiff's claim must fail as a matter of law. To hold otherwise would condemn, without proof, all parking lots with curbs as dangerous.

Id. at 3.

As in Cagle, the curb at issue is similar to curbs found in parking garages and around sidewalks. There is no evidence that the design and construction of the curb created an unsafe or dangerous condition, or that the lighting in the parking lot was insufficient.[3] Nor is there any evidence of prior incidents of persons tripping over the curb at issue. Accordingly, as in Cagle, Defendant is entitled to judgment as a matter of law.

In an effort to avoid summary judgment, Minias in his response brief does not claim insufficient lighting or that the curb itself was dangerous. Instead, his sole argument is that

---

[3]In fact, unlike in Cagle, the only evidence in the record is that the lighting was sufficient and met the applicable industry standards. Further, unlike the curb in Cagle, the curb over which Minias tripped was painted bright yellow instead of white.

8

Defendant was negligent because Minias was carrying linens and could not see the curb drop-off, yet his brother, the manager of the Hermitage Hotel, failed to warn him about the curb.

The Court rejects this argument. Plaintiffs have failed to cite a single case to support their position. Taken to the logical extreme, Plaintiffs' argument would impose a duty on a premises owner to assist and guide patrons as they walk about the premises to protect them even from open and obvious dangers.

True, Minias was carrying the linens to help out his brother but there is no evidence to suggest that his brother assumed a duty to show him how to carry the linens or how to walk with the linens. Even if Minias' brother assumed a duty, his only duty was of acting carefully. Marr v. Montgomery Elevator, 922 S.W.2d 526, 529 (Tenn. Ct. App. 1995). There is no evidence of a breach of this duty.

By all accounts, the area where Minias fell was sufficiently lit and the curbing was standard sized and painted bright yellow. In other words, the potential for tripping on the curb was open and obvious. While Minias claims that his brother should have warned him about the curb, "Tennessee law provides that premises owners owe invitees the duty to warn of latent and hidden dangers," but "this duty does not arise if the danger is open and obvious." Eaton, 891 S.W.2d at 595.

All of the evidence in this case points to a simple, but unfortunate, accident. However, "Tennessee courts have repeatedly stated that negligence is not presumed from the mere fact of an accident or injury." Kellner, 359 F.3d at 403 (collecting Tennessee cases). Since Minias has shown no more than an accident occurred, the Defendant is entitled to summary judgment.

9

## IV. CONCLUSION

On the basis of the foregoing, the Motion for Summary Judgment (Docket Entry No. 17) filed by Defendant Historic Hotels of Nashville, L.L.C., d/b/a the Hermitage Hotel will be granted and judgment will be entered in favor of Defendant. Plaintiffs' claims will be dismissed.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE